**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>THOMAS FASSELL, *et al.*,<br><br>Defendants. | Criminal Action No. 21-692 (CKK) |

**MEMORANDUM OPINION AND ORDER**
(May 16, 2022)

This criminal case is one of several hundred arising from the insurrection at the United States Capitol on January 6, 2021. On September 21, 2021, Magistrate Judge Zia M. Faruqui of the United States District Court for the District of Columbia set release conditions for Defendants. These release conditions are, broadly, the least restrictive that are generally set. Defendants have been released on personal recognizance, they are not subject to GPS monitoring, they are not subject to a curfew, they require Court approval only for travel outside the continental United States, and they are subject only to intermittent supervisory visits by Pretrial Services for the United States District Court for the Middle District of Florida. Consistent with the minimum level of release conditions, Defendants (collectively, "Fassells") are also prohibited from owning a firearm, destructive device, or any other similar weapon.

Pending before the Court is Defendants' [30] Motion to Modify Conditions Release, in which Defendants ask the Court to modify their conditions of release to permit Marilyn Fassell to possess a pistol in the home while on supervised release.[1] Upon consideration of the pleadings,[2]

---

[1] Because Defendants live together and Thomas Fassell could be said to constructively possess Marilyn Fassell's firearm while in the home, Thomas Fassell requests the same modification to his conditions of release.

[2] The Court's consideration has focused on:
- Statement of Facts in Support of the Criminal Complaint, ECF No. 1-1 ("Aff.");

1

the relevant legal authority, and the record before the Court, the Court shall **DENY** Defendants' Motion.

## I. BACKGROUND

Defendants are charged by Information with four misdemeanor counts each: (1) one count of Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. §§ 1752(a)(1)); (2) one count of Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); (3) one count of Violent Entry and Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (4) one count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). Information, ECF No. 15.

The facts discussed here are based upon the record presently before the Court, including the parties' pleadings and associated exhibits, the photographic evidence presented by the Government, and the [1-1] Statement of Facts in support of the [1] Criminal Complaint. In an exercise of its discretion, the Court declines to hear additional evidence. *See United States v. Sheffield*, 799 F. Supp. 2d 18, 29 (D.D.C. 2011) ("The Court is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." (cleaned up)). The facts stated here do not represent the Court's findings of fact on the merits of the case, which are the province of the jury.

On January 6, 2021, a joint session of the United States Congress convened to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on

---

- Defendants' Motion to Modify Condition of Release, ECF No. 30 ("Mot."); and
- The Government's Opposition to Defendant's Motion for Pretrial Release, ECF No. 40 ("Opp.").

Neither Defendant filed a reply in support of their [30] Motion.

November 3, 2020. Aff. at 1. The joint session began at approximately 1:00 p.m., with then-Vice President Michael R. Pence presiding. *Id.* By 1:30 p.m., the United States House of Representatives and the United States Senate adjourned to separate chambers within the Capitol to resolve an objection raised in the joint session. *Id.* Vice President Pence continued to preside in the Senate chamber. *Id.* As the House and Senate proceedings took place, a large crowd of protesters gathered outside the Capitol. *Id.* "[T]emporary and permanent barricades were in place around the exterior of the . . . building, and United States Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside." *Id.*

Shortly after 2:00 p.m., "individuals in the crowd forced entry into the Capitol building, including by breaking windows and by assaulting members of the Capitol Police, as others in the crowd encouraged and assisted those acts." *Id.* These violent acts caused members of the Senate and House of Representatives to evacuate the chambers of the Capitol and suspend the certification process of the presidential election results. *Id.* The riot "desecrated [the Capitol], blood was shed, and several individuals lot their lives." *Trump v. Thompson,* 20 F.4th 10, 19 (D.C. Cir. 2021). All told, "[t]he events of January 6, 2021 marked the most significant assault on the Capitol since the War of 1812." *Id.* at 18-19 (footnote omitted).

The Government alleges that the Fassells stormed into the Capitol around 2:00 p.m. Marilyn Fassell yelled "they can't stop millions" as she approached the Capitol. Aff. at 3. Twenty minutes later, she shouted, "Take it! Take it! Take it!" and "Let's go! Let's go!" *Id.* As the crowd around her seems to slow in its advance, Marilyn Fassell asked "Why is everybody stopping?" *Id.* Once inside, Marilyn Fassell took a selfie of herself smoking a cigarette in the Capitol Rotunda and bragged, "[w]e busted in the Capitol." *Id.* at 3-4.

On January 22, 2021, the Fassells agreed to a voluntary interview with law enforcement, in which they explained that they did enter the Capitol but thought they were permitted to enter. *Id.* at 2. Marilyn Fassell told law enforcement that she saw broken doors and glass as she entered the Capitol. *See id.* The Fassells did not leave the Capitol until police officers forcibly ushered them out around 3:00 p.m.; Marilyn Fassell was reticent to leave, exclaiming "This is my house, we pay taxes for this" and "[w]e pay their salary" on her way out. *Id.* at 5.

On September 15, 2021, arrest warrants were returned executed and Defendants appeared before Magistrate Judge Faruqui several days later. Magistrate Judge Faruqui set minimum release conditions for Marilyn Fassell, releasing her on personal recognizance, limiting travel to the continental United States without Court authorization, and subjecting her to courtesy supervision by in the Middle District of Florida. ECF No. 10 at 3. Magistrate Judge Faruqui imposed no curfew, no GPS monitoring, no home detention, no drug testing, and no forfeiture of passports. *See id.* at 2. The only additional restrictions were an order to stay away from the District of Columbia other than for court dates and to surrender all firearms. *See id.* Marilyn Fassell did not challenge these release conditions during this initial hearing or at any time until filing her [30] Motion.

## II.   LEGAL STANDARD

Pursuant to 18 U.S.C. § 3145(a)(2), a defendant subject to release conditions may file a motion for amendment of those conditions with the court having original jurisdiction over the offenses charged. If upon the defendant's appearance before a judicial officer that judicial officer determines that release on personal recognizance with no conditions "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," that judicial officer may impose certain conditions of release. 18 U.S.C. § 3142(c).

4

These conditions must be the "least restrictive" to secure these interests. *Id.* § 3142(c)(1)(B). In determining whether a defendant should remain subject to such conditions, the Court must consider "the available information" concerning four enumerated factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *Id.* § 3142(g).

### III.   DISCUSSION

The Court considers the 3142(g) factors based upon the present record without holding an additional hearing, which neither party requested. *See United States v. Sheffield*, 799 F. Supp. 2d 18, 20 (D.D.C. 2011) (permitting district court to use in its analysis the evidence relied on by the magistrate judge); *see also United States v. Anderson*, 384 F. Supp. 2d 32, 34 (D.D.C. 2005) (taking into consideration the indictment, "the briefs and other papers submitted by the parties, the proceedings before [the magistrate judge], the [magistrate's] findings of fact and conclusions of law, and the evidence and proffers before [the court]"). Based on the current record, the Court concludes that clear and convincing evidence supports a finding that a firearms prohibition is necessary to "reasonably assure" the "safety of any other person and the community" or flight in advance of trial, § 3142(e)(1).

#### A. Nature and Circumstances of the Offense Charged

Turning to the § 3142(g) factors, the Court first considers the "nature and circumstances of the offense charged" including "whether the offense is a crime of violence." § 3142(g)(1). The Court must begin with the "serious and chilling nature" of the events that took place at the U.S. Capitol on January 6, 2021. *See United States v. Sabol*, 534 F. Supp. 3d 58, 71 (D.D.C. 2021). Defendants took part in an insurrection aimed at toppling the peaceful transfer of power and

5

interrupting one of the most solemn and critical acts Congress takes in furtherance of American democracy.  Marilyn Fassell's "words and movements during" the insurrection show a clear disregard for the law.  *See United States v. Whitton*, 534 F. Supp. 3d 32, 38 (D.D.C. 2021).  She gleefully proclaimed that she "busted in the Capitol," disrupting Congressional proceedings to certify the 2020 presidential election.  She also urged the mob forward, instructing those around her "Let's go!" and shaming the less enthusiastic around her "Why is everybody stopping?"  With the Rotunda's Frieze of American History looking down upon her, including scenes from the Battle of Lexington and the signing of the Declaration of Independence, she photographed herself taking drags of a cigarette.  Only once police officers forcibly cleared the Capitol Rotunda did she leave through what she characterized as broken doors, shouting about the trashed Capitol "This is my house, we pay taxes for this."  The nature and circumstances of the offense, in context of a violent insurrection, weigh in favor of the firearms prohibition.

### B.  Weight of the Evidence

The weight of the evidence against Defendants also favor the firearms prohibition.  The images provided by the Government depict Defendant's presence in the Capitol, including the cigarette selfie.  The Government states that there are other witnesses to whom the Fassells subsequently bragged about their involvement in the insurrection.  As such, the weight of the evidence also supports the firearms prohibition.

### C.  History and Characteristics of the Defendant

Under the third section 3142(g) factor, the Court must consider Defendants' "history and characteristics," including his and her "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning

appearance at court proceedings," and "whether, at the time of the current offense or arrest, [the defendant] was on probation, on parole, or on other release." § 3142(g)(3). Marilyn Fassell rightly argues that Defendants engaged in no violent conduct on January 6, 2021, and that her criminal history is limited to an old conviction for drug possession and driving under the influence. There is also nothing in the record suggesting that Marilyn Fassell has not otherwise been a responsible gun owner. Therefore, this factor weighs against the firearms prohibition.

**D. The Nature and Seriousness of the Danger Posed by Defendant's Release**

It is true that the Fassells did not commit any acts of violence on January 6, 2021, and they did not carry firearms. That is why the Fassells remain released on personal recognizance and are not detained pending trial. The question is therefore whether the nature and seriousness of the offenses counsel in favor of the firearms prohibition. In this regard, even nonviolent crimes necessitate a firearms prohibition. *See, e.g.*, *United States v. Green*, 2019 WL 6529446, at *3 (N.D. Tex. Dec. 4, 2019) (in tax fraud cause, "Defendant's possession of firearms [while on pretrial release] endangers officers of the Pretrial Services who may make unannounced visits to ensure that Defendant is complying with the conditions of his release"). The Government represents, and Defendants do not contest, that Defendants' Pretrial Services Officer makes in-person, unannounced home visits. To the extent that the possession of firearms endangers the Pretrial Services Officer, a firearms prohibition is warranted.

This is doubly so in consideration of the context of Defendants' offenses. Defendants took part in an insurrection against the federal government. That *their* conduct therein was nonviolent does not detract from violence of the insurrection that they joined. In consideration of § 3142(g), and noting the D.C. Circuit's observation that "[i]t cannot be gainsaid that the violent breach of the [U.S.] Capitol on January 6 was a grave danger to our democracy, and that those who

participated could rightly be subject to detention to safeguard the community," *see United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021), the Court is persuaded that this factor weighs in favor of the firearms prohibition.

### E. Second Amendment

Before concluding, the Court pauses to briefly acknowledge Defendants' invocation of the Second Amendment and *Heller v. District of Columbia*, 554 U.S. 570 (2008). Mot. at ¶ 7. To the extent that Defendants mean to argue that a firearms prohibition as to Defendants is unconstitutional under the Second Amendment, it is waived as a "perfunctory and undeveloped argument." *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013). Even had the argument been briefed, "Defendant[s'] express agreement to observe the firearm restraint" is also waiver of any alleged Second Amendment right to possess a gun while on pretrial release in this case. *See Green*, 2019 WL 6529446, at *3 n.3 (citing *United States v. Lozano*, 757 F. App'x 348, 351 (5th Cir. 2018)). Having waived such an argument, the Court need not respond to it on the merits.

### IV. CONCLUSION

A firearms prohibition on pretrial release is a standard condition of release that protects the safety of those charged, the community, and law enforcement. On the whole, the firearms prohibition is warranted here.

As such, it is hereby

**ORDERED** that Defendants' [30] Motion is **DENIED**.

**SO ORDERED.**

**Dated:** May 16, 2022

                                                     /s/
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge