**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No.: 21-CR-692 (CKK) |
| v. | : | 40 U.S.C. § 5104(e)(2)(G) |
| **MARILYN FASSELL,** | : | |
| Defendant. | : | |

**STATEMENT OF OFFENSE**

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Marilyn Fassell, with the concurrence of her attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020

Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5.      At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6.      At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.7 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Marilyn Fassell's Participation in the January 6, 2021, Capitol Riot*

8. The defendant, Marilyn Fassell, lives in Largo, FL. On January 5, she and her husband, Thomas Fassell, drove from their home in Largo to Washington, D.C. The purpose of the defendants' trip to Washington, D.C., was to protest Congress' certification of the Electoral College.

9. On the morning of January 6, the defendant and her husband went to the National Mall and attended the "Stop the Steal" protest where they joined a large crowd who, like the Fassells, believed that the 2020 election had been stolen. Afterward, defendant and her husband walked with a large crowd down Constitution Avenue towards the United States Capitol building.

10. Once they reached the Capitol, defendant and her husband joined a large crowd gathered on restricted grounds on the West side of the Capitol building. At 1:57 PM, defendant recorded a video on her husband's cellphone. In the video, defendant comments on the use of tear

gas and rubber bullets. At 1:58 PM, defendant recorded another video—in close proximity to the scaffolding surrounding the inaugural stage—in which defendant can be heard saying "They can't stop millions" in reference to the large crowd of protestors who had gathered at the Capitol to demonstrate.

11. At this point, the defendant realized that she and her husband, along with the other protesters, did not have permission to enter the U.S. Capitol.

12. At 2:11 PM, defendant recorded another video showing the surrounding crowd covering their faces in response to tear gas. On the video, defendant's husband can be heard coughing and he says that he wants to leave. However, rather than leaving, defendant and her husband made the knowing decision to stay at the protest and advance towards the building with fellow demonstrators.

13. At 2:13 PM, when the crowd stopped advancing towards the Capitol building, the defendant can be heard on video encouraging the crowd by yelling "Let's go!" and at one point she asks "Why are we stopping? Why is anybody stopping?"

14. In a video recorded at 2:23 PM, defendant was filming as she and her husband advanced up the steps to the Upper West Terrace. When reaching the top of the steps, defendant panned the phone so that the video focuses on a police barricade that had been knocked over and pushed aside. Upon seeing the barricade, defendant can be heard yelling "We're here. We broke the Capitol."

15. The defendant and her husband entered the Capitol through the Senate Wing Doors around 2:25 PM. Defendant and her husband walked by broken glass from smashed windows, and they carried flagpoles, which are not permitted in the Capitol for security reasons.

16. Defendant and her husband knew that they were participating in an unlawful demonstration. In a video recording at 2:27 PM, the defendant and her husband walked into the Crypt as the crowd aggressively yelled "Stop the Steal!" Defendant can be heard on the video yelling "We busted in the Capitol"—an acknowledgement that defendant and her husband did not have lawful authority to demonstrate in the Capitol.

17. Defendant's video recordings also show that she and her husband were part of a disorderly crowd that was disturbing the normal and peaceful condition of the Capitol building. In the 2:27 PM video recording, a voice in the crowd can be heard yelling "Nancy...Nancy...We're coming for you Nancy."

18. As defendant and her husband progressed through the Capitol, the unruly conduct of other protestors underscored that this was not a lawful public demonstration. Both defendant and her husband observed a man carrying what appeared to be Speaker of the House Nancy Pelosi's nameplate. It was partially broken such that it was only bearing "of the house" and "ncy Pel." Defendant further contributed to this disorderly environment by smoking a cigarette, which is prohibited inside the Capitol building.

19. Defendant and her husband also understood that their conduct was unlawful when they entered the private office of United States Senator Jeff Merkley.

20. As defendant and her husband left the Capitol building defendant yelled "This is my house! We pay taxes for this. We pay their salary."

21. The defendant and her husband eventually left the Capitol building around 3:07 p.m. They were inside for approximately 40 minutes. After leaving the Capitol, the defendant yelled at officers "Go get Biden! Get Hilary! Get Pelosi! Get Obama! Bring them out! Bring them out!"

## *Elements of the Offense*

22. Marilyn Fassell knowingly and voluntarily admits to all the elements of 40 U.S.C. § 5104(e)(2)(G). Specifically, defendant admits that while inside the U.S. Capitol Building, defendant willfully and knowingly paraded, demonstrated, or picketed.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By:    <u>/s/ Jason M. Crawford</u>
        Jason M. Crawford
        Trial Attorney
        D.C. Bar No. 1015493

## DEFENDANT'S ACKNOWLEDGMENT

I, Marilyn Fassell, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 7/13/22           *Marilyn Fassell*
                        Marilyn Fassell
                        Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: July 13, 2022     _____
                        Nathan Silver
                        Attorney for Defendant