UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **Case No. 1:21-cr-692 (CKK)** |
| v. | : | |
| | : | |
| THOMAS FASSELL, | : | |
| | : | |
| Defendant | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Thomas Fassell to 30 days' incarceration, 36 months of probation, and $500 in restitution.

### I.    Introduction

Defendant Thomas Fassell ("Fassell"), a 68-year-old retired United States Postal Service worker, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars' in losses.[1]

Fassell pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G). As explained herein, a sentence of incarceration is appropriate in this case because Fassell (1) joined the mob

---

[1] Although the Statement of Offense in this matter, filed on July 19, 2022 (ECF No. 55 at ¶ 6) reflects a sum of more than $2.7 million dollars for repairs, as of October 17, 2022, the approximate losses suffered as a result of the siege at the United States Capitol was $ 2,881,360.20. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

on the West Plaza and then entered the Capitol, despite seeing overturned police barricades, breathing tear gas fired by police attempting to repel the rioters, passing smashed glass near the Senate Wings Doors, and hearing a blaring security alarm;  (2) entered the office suite of Speaker of the House Nancy Pelosi, a sensitive space within the Building; (3) remained inside the Capitol for nearly 40 minutes; (4) boasted about his involvement in the riot and showed a co-worker a recording from inside the Capitol; and (5) later attempted to minimize his responsibility for his conduct, telling a local newspaper that he did not realize that it was unlawful to be inside the Capitol that day.

The Court must also consider that Thomas Fassell's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers and disrupt the proceedings. Here, the facts of and circumstances of Fassell's crime support a sentence of 30 days' incarceration in this case.

## II.      Factual and Procedural Background

### The January 6, 2021 Attack on the Capitol

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 55 (Statement of Offense), at ¶¶ 1-7.

### Defendant Thomas Fassell's Role in the January 6, 2021 Attack on the Capitol

On January 5, 2021, Thomas Fassell and his wife Marilyn traveled to Washington, D.C., from their home in Largo, FL to attend the "Stop the Steal" rally. *See* ECF 55 at ¶ 8.  On the morning of January 6, the Fassells went to the National Mall and attended the protest where they joined a large crowd who, like the Fassells, believed that the 2020 election had been stolen. Afterward, the Fassells walked with a large crowd down Constitution Avenue towards the United States Capitol building.

Once they reached the Capitol, the Fassells joined a large crowd gathered on restricted grounds on the West side of the Capitol building. As depicted in a still-shot below, Marilyn Fassell recorded a video of the crowd on Thomas Fassell's cellphone. *See* Exhibit 1; ECF 55 at ¶ 10 (Figure 1, below). In the video, she comments on the use of tear gas that law enforcement was deploying in an effort to keep the crowd from advancing towards the building.



*Figure 1*

By 1:58 p.m., a few Capitol Police officers were standing at the top of the steps leading to the Northwest Terrace, in an attempt to defend the Capitol. A large crowd had gathered at the bottom of the steps, as captured in a still-shot from the video taken on Fassell's phone (Figure 2 below).  Marilyn Fassell can be heard yelling "They can't stop millions." *See* Exhibit 2; ECF 55 at ¶ 10.



*Figure 2*

Marilyn Fassell also recorded the surrounding crowd covering their faces in response to tear gas. *See Exhibit 3* (Figure 3, below) ECF 55 at ¶ 12. On the video, Thomas Fassell can be heard coughing and he tells his wife that he wants to leave. However, rather than leaving, the Fassells opted to advance towards the building with fellow rioters.



*Figure 3*

At 2:13 PM, when the crowd stopped advancing towards the Capitol building, Marilyn Fassell can be heard on video encouraging the crowd by yelling "Let's go!" and at one point she yells to the surrounding crowd "Why are we stopping? Why is anybody stopping?" *See* Exhibit 4; (Figure 4 below) ECF 55 at ¶ 13.

Marilyn Fassell was also filming as she and Thomas Fassell advanced up the steps to the Upper West Terrace. When reaching the top of the steps, she panned the phone so that the video focused on a police barricade that had been knocked over and pushed aside. Upon seeing the barricade, she can be heard yelling on the video "We're here. We broke the Capitol." *See* Exhibit 5; (Figure 4 below) ECF 55 at ¶ 14.



*Figure 4*

The Fassells entered the Capitol together through the Senate Wing Doors around 2:25 PM. *See* Exhibit 6 (Figure 5 below) ECF 55 at ¶ 15. The Fassells walked by broken glass from smashed windows, and they carried flagpoles, which are not permitted in the Capitol for security reasons.



*Figure 5*

After entering the Capitol, the Fassells walked toward the Crypt as Marilyn Fassell continued recording.  Another rioter in the crowd can be heard yelling "Nancy...Nancy...We're coming for you Nancy."  *See* Exhibit 7; ECF 55 at ¶ 17.  Marilyn Fassell can be heard on the video yelling "We busted in the Capitol."  After exiting the Crypt, the Fassells took the stairway to the second floor of the Capitol and entered the office suite used by Speaker of the House Nancy Pelosi. *See* Exhibit 8 (Figure 6 below).



*Figure 6*

As the Fassells moved through the Capitol, they observed the unruly conduct of other rioters.  For example, inside the Rotunda, the Fassells observed a man carrying what appeared to be Speaker of the House Nancy Pelosi's nameplate. It was partially broken such that it was only bearing "of the house" and "ncy Pel." *See* ECF 55 at ¶ 18. Marilyn Fassell contributed to the disorderly environment inside the Capitol by smoking a cigarette, which is prohibited inside federal buildings (Figure 7, below).  *Id*.



*Figure 7*

Marilyn Fassell continued to record video as she and Thomas Fassell left the Capitol building and she can be heard yelling "This is my house! We pay taxes for this. We pay their salary." *See* Exhibit 10; ECF 55 at ¶ 20.

After exiting the Capitol building, Marilyn Fassell was still recording and she can be heard yelling at a group of law enforcement officers "This is our house. This is our house. Go get Biden! Get Hilary! Get Pelosi! Get Obama! Bring them out! Bring them out!" *See* Exhibit 11; ECF 55 at ¶ 21.

In total, the Fassells spent nearly 40 minutes inside of the Capitol. They have both admitted to willfully and knowingly parading, demonstrating, or picketing inside a U.S. Capitol Building.

After returning to Florida, Thomas Fassell showed a co-worker the videos that Marilyn had recorded inside the Capitol, and he bragged about their involvement.

*Statements Following January 6*

On January 22, 2021 the Fassells gave a joint voluntary interview to the FBI. During the interview, the Fassells admitted to being inside the Capitol Building on January 6, 2021. However, Thomas Fassell attempted to minimize his conduct by telling the FBI that Antifa had been present at the Capitol to incite the crowd and wreak havoc.

Even nine months after the Capitol siege, Fassell continued to downplay his actions. Following their arrests on September 15, 2021, the Fassells spoke with a reporter from the *Tampa Bay Times*.[2] In an effort to justify their actions, the Fassells told the newspaper that they did not think going into the building was illegal because they were purportedly invited inside by a man who they believed was a Capitol police officer.  The government is not aware of any evidence that supports this claim. Moreover, the Fassells would have seen broken glass and heard the blare of the security alarm as they entered the Capitol through the Senate Wing Doors.

Rather than taking responsibility for their actions, the Fassells also told the newspaper that they believed the Capitol insurrection was a setup by Antifa and U.S. House Speaker Nancy Pelosi. Apparently asked about a statement in the Criminal Complaint -- that a tipster had told the FBI that Fassell bragged to the tipster and a few others that he and his wife were inside the Capitol, and showed the tipster videos of himself and his wife inside the Capitol -- Fassell denied that he had bragged about participating in the riot. Rather, he implausibly claimed that he wanted to show off how beautiful the inside of the Capitol was because he his wife had never previously visited.

---

[2] *See* "Largo woman smoke in Capitol during riot. Now she, husband face charges." TAMPA BAY TIMES, *available at* https://www.tampabay.com/news/crime/2021/09/17/largo-woman-smoked-in-capitol-during-riot-now-she-husband-face-charges/ (last accessed 10-20-22).

*The Charges and Plea Agreement*

On September 9, 2021 the United States charged the Fassells by criminal complaint with violating 18 U.S.C. §§ 1752(a)(1), (a)(2); and 40 U.S.C. §§ 5104(e)(2)(D), (e)(2)(G). The Fassells were arrested on September 15, 2021, and on November 19 2021, the United States charged them by a four-count Information with violating 18 U.S.C. §§ 1752(a)(1), (a)(2); and 40 U.S.C. §§ 5104(e)(2)(D), (e)(2)(G). On July 19, 2022 pursuant to a plea agreement, both Fassells pleaded guilty to Count Four of the Information, charging them with a violation of 40 U.S.C. § 5104 (e)(2)(G). By plea agreement, they agreed to pay $500 in restitution to the Department of the Treasury.

## III.    Statutory Penalties

Fassell now faces a sentencing on a single count of violating 40 U.S.C. § 5104 (e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. The defendant must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with

similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, the Section 3553(a) factors weigh in favor of 30 days incarceration.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Fassell's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Fassell, the absence of violent or destructive acts is not a mitigating factor. Had he engaged in such conduct, he would have faced additional criminal charges.

Here, Fassell joined the mob on the West Plaza and subsequently entered the Capitol through the Senate Wing Doors, despite seeing overturned police barricades, breathing tear gas fired by police attempting to repel the rioters, passing smashed glass near the Senate Wing Doors, and hearing a blaring security alarm.  Once inside the Capitol, he spent time inside Speaker Pelosi's office suite, a sensitive space within the Capitol.  Although witnessing mayhem around him, including another rioter carrying away what appeared to be a piece of Speaker Pelosi's nameplate, Fassell traveled through the Capitol, and remained inside the building for nearly 40 minutes. Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B.  The History and Characteristics of Thomas Fassell

Fassell and his wife cooperated with law enforcement by voluntarily turning over the clothing they had worn on January 6 and giving the FBI access to the cell phone which contained the footage from January 6.  Despite this cooperation, Fassell falsely claimed to the *Tampa Bay Times* that he and his wife did not realize that it was unlawful to be inside the Capitol. By pleading guilty, Fassell has accepted responsibility for his crimes, but to date he has not expressed remorse.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be

deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.

The gravity of these offenses demands deterrence. *See United States v. Mariposa Castro*, 1:21-cr-00299 (RBW), Tr. 2/23/2022 at 41-42 ("But the concern I have is what message did you send to others? Because unfortunately there are a lot of people out here who have the same mindset that existed on January 6th that caused those events to occur. And if people start to get the impression that you can do what happened on January 6th, you can associate yourself with that behavior and that there's no real consequence, then people will say why not do it again."). This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Of the two co-defendants, Thomas Fassell is less culpable than Marilyn Fassell. On the video that she recorded, Thomas Farrell can be heard coughing (presumably from the tear gas) and telling his wife that he wants to leave, which suggests that she was the one who wanted to advance into the Capitol when he was inclined to leave. Nonetheless, he later boasted to a co-worker about his participation in the riot, and he showed his co-worker his wife's video of the events of January

6.  Moreover, in a press interview following his arrest, he said that the Capitol insurrection was a setup by Antifa and Speaker Pelosi. The government acknowledges that Fassell has accepted responsibility by entering a guilty plea, but specific and general deterrence demand a sentence of incarceration to impress upon him the true seriousness of his conduct, and to show the public that no rioter was an invited tourist on January 6.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[3] This Court must sentence Fassell based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Fassell has pleaded guilty to Count Four of the Information, charging him with parading, demonstrating, or picketing, in violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A.  § 3553(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad

---

[3] Attached to this sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol breach defendants.  That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted. *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

"Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006). "[A] defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences." Consequently, Section 3553(a)(6) neither prohibits nor requires a sentencing court "to consider sentencing disparity among codefendants." *Id.* Plainly, if Section 3553(a)(6) is not intended to establish sentencing uniformity among codefendants, it cannot require uniformity among all Capitol siege defendants charged with petty offenses, as they share fewer similarities in their offense conduct than codefendants do. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Tr. at 48-49 ("With regard to the need to avoid sentence disparity, I find that this is a factor, although I have found in the past and I find here that the crimes that occurred on January 6 are so unusual and unprecedented that it is very difficult to find a proper basis for disparity.") (statement of Judge Chutkan)

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those cases. Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases as the closest "comparators" when assessing unwarranted disparity. But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases,

even those involving similar criminal conduct and defendant's records. After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095. It follows that a sentencing court in a Capitol siege petty offense case is not constrained by sentences previously imposed in other such cases. *See United States v. Stotts*, D.D.C. 21-cr-272 (TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33-34 ("I certainly have studied closely, to say the least, the sentencings that have been handed out by my colleagues. And as your attorney has pointed out, you know, maybe, perhaps not surprisingly, judges have taken different approaches to folks that are roughly in your shoes.") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. For that reason, a permissible sentence imposed for a petty offense is unlikely to cause an unwarranted disparity given the narrow range of permissible sentences. The statutory range of for a petty offense is zero to six months. Given that narrow range, a sentence of six months, at the top of the statutory

range, will not create an unwarranted disparity with a sentence of probation only, at the bottom. *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr. at 23-24 ("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson); *United States v. Dresch*, D.D.C. 21-cr-71 (ABJ), Aug. 4, 2021 Sent. Hrg. Tr. at 34 ("Ensuring that the sentence fairly reflects where this individual defendant falls on the spectrum of individuals arrested in connection with the offense has largely been accomplished by the offer of the misdemeanor plea because it reduces his exposure substantially and appropriately.") (statement of Judge Berman Jackson); *United States v. Peterson*, D.D.C. 21-cr-309, Sent. Hrg. Tr. at 26 (statement of Judge Berman Jackson) (similar).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. For example, this Court and other judges of the court have sentenced Capitol breach defendants who spent time in sensitive places within the Capitol. A defendant's entry into a sensitive space, such as a member's office or the House Speaker's Office Suite, places that defendant in a more serious category of offenders than defendants who remained in hallways or central, more public spaces, such as the Rotunda. A defendant who entered a sensitive space took an extra step to occupy the Capitol and displace Congress and to display the dominance of the mob over the will of the people. That person's presence is even more disruptive. An unauthorized individual in a private office poses a greater threat and creates a greater impediment to members of Congress and staffers just trying to do their jobs than would a trespasser passing through a hallway.

One of the most famous photographs from January 6 is that of a rioter in Speaker Pelosi's office, with his feet on her desk. *See* Amended Complaint, *United States v. Richard Barnett,* 21-cr-38, ECF No. 3, at 2. That photograph has become notorious likely for exactly this reason, because of what invading the office of a member of Congress represents: a show of intimidation, an attempted display of power, above and beyond entering the building.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Brandon Miller*, 21-cr-266 (TSC), the defendant: (1) ignored multiple warning signs such as tear gas indicating it was unlawful to enter Capitol building; and (2) made statements after January 6 showing pride rather than remorse or contrition for his criminal conduct. The defendant pled guilty to violating 18 U.S.C. § 5104(e)(2)(G), and the Court sentenced him to 20 days' incarceration.  In the government's view, Thomas Fassell's presence in Speaker Pelosi's office suite and the length of time Fassell spent in the building makes his conduct worse and deserving of a longer term of incarceration.

In *United States v. Jancart*, 21-cr-148 (JEB), the defendant: (1) entered the House Speaker's office suite; (2) made post 1/6 statements minimizing or justifying conduct; and (3) remained inside the Capitol for nearly 40 minutes.  The defendant pled guilty to violating 18 U.S.C. § 5104(e)(2)(D), and the Court sentenced him to 45 days' incarceration. The government acknowledges that Jancart's decision to bring a gas mask to the Capitol shows a preparation for violence that makes his behavior slightly worse than Fassell's conduct such that Fassell is deserving of a slightly lower sentence.

In *United States v. Buhler,* 21-cr-00510 (CKK), the defendant (1) ignored the sound of flashbangs and the sight of plumes of smoke rising in the air, rioters scaling the scaffolding over the northwest staircase, and shards of broken glass on the ground as she entered the Senate Wing Door; and she (2) entered and remained in the Senate Gallery, a sensitive area of the Capitol. The defendant pled guilty to violating 18 U.S.C. § 5104(e)(2)(G), and this Court sentenced her to 30 days' incarceration and 36 months of probation. In that case, Buhler cheered as rioters physically crushed U.S. Capitol Police officers at the East Rotunda door—a factor that is not present here— but Thomas Fassell spent more time in the Capitol than Buhler (40 minutes v. 28 minutes) such that a similar sentence is appropriate.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.       Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Thomas Fassell to 30 days'

incarceration, 36 months' probation, and $500 in restitution.   Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   /s/ *Jason M Crawford*
Jason M. Crawford
Trial Attorney, Detailee
DC Bar No. 1015493
175 N St. NE
Washington, D.C. 20002
(202) 598-1099
Jason.M.Crawford@usdoj.gov

Douglas Meisel
Trial Attorney, Detailee
601 D ST, NW Washington, DC
202-923-7821
Douglas.Meisel@usdoj.gov

## **CERTIFICATE OF SERVICE**

On this 4th day of November, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

/s/ *Jason M Crawford*
Trial Attorney, Detailee