UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America | ) |
| | ) |
| v. | )   USDC No. 21-cr-692-02 (CKK) |
| | ) |
| Marilyn Fassell, *defendant*. | ) |

DEFENDANT'S SENTENCING MEMORANDUM

Defendant, through undersigned counsel Nathan I. Silver, II, Esq., appointed by this Court under the Criminal Justice Act, submits this memorandum to aid at sentencing on December 9, 2022 at 1:30 p.m. when she appears before the Court for her hearing.

1. The defendant was named on Sept. 9, 2021, in a criminal complaint issued by this Court in 21-mj-593-02 (RMM) and arrested six days later in the Middle District of Florida, where she appeared the following day for a Rule 5 hearing. (*See* ECF Doc. 13, Rule 5 documents)   She appeared initially on Sept.  16, 2022, before Magistrate Zia M. Faruqui, when she was released on her own recognizance with conditions. (ECF Doc. 10, signed and docketed Feb. 21, 2022)  Since then, she has been in compliance with the terms Judge Faruqui imposed. Throughout her period on release, she has remained in compliance, without incident.  Her release order permitted her to travel, which she has done both for work and recreation during the presentence period, without violating the conditions imposed on her.  In all matters herein, she has shown respect for the Court.

2. The defendant, along with her husband Thomas Fassell, stands charged, first in a criminal complaint, later in a criminal Information filed on November 19, 2021, with four misdemeanor offenses resulting from her involvement in the Capitol Hill protests of January 6,

2021: (a) Entering and Remaining in a Restricted Building (Count One), in violation of 18 U.S.C. §1752(a)(1); (b) Disorderly and Disruptive Conduct Which Impedes the Conduct of Government Business, in violation of 18 U.S.C. §1752(a)(2); (c) Disruptive Conduct in the Capitol Buildings, in violation of 40 U.S.C. 5104(e)(2)(D), and (d) Demonstrating, Picketing or Parading in a Capitol Building, in violation of 40 U.S.C. 5105(e)(2)(G) ("Demonstrating").

  3. On July 19, 2022, per a Plea Agreement with the United States, the defendant entered a plea of guilty to Demonstrating, a petty offense which carries a maximum sentence up to six (6) months imprisonment, a fine of up to $5,000, a term of probation not to exceed five (5) years and a $10 special assessment.  As a petty offense, the U.S. Sentencing Guidelines do not apply. (Presentence Investigation Report ("PSI"), page 13, ¶68)  The defendant agreed to pay $500.00 in restitution toward defraying the cost of repairing damage to the U.S. Capitol, repairs which were necessary after the riot.

  4. Defendant and her counsel have reviewed the final PSI.  Defendant made several objections to the Draft PSI (ECF Doc. 65)  Most of them had to do with names of persons or their relationship to the defendant.  The only outstanding objection is noted in the Final PSI (ECF Doc. 68, page 18) which has to do with the defendants joint ownership of automobiles; the defendant believes the entry overstates the number they actually own.

  5. Counsel has reviewed and provided to his client the government's sentencing memorandum (ECF Doc. 71, filed Nov. 4, 2022) and the U.S. Probation Office's Sentencing Recommendation (ECF Doc. 69, filed Oct.19, 2022).  The government recommends a split sentence of sixty (60) days incarceration,  thirty-six (36) months probation, sixty (60) hours of community service, and $500 in restitution. (Doc. 59, page 1)  The probation office recommends

a period of fourteen (14) days; payment of a fine of five hundred (500) dollars[1], restitution of five-hundred (500) dollars (to which the defendant previously agreed in her Plea Agreement), and the mandatory payment of ten (10) dollars.  It recommends neither a period of probation nor hours of community service.

      6.  While in the Capitol or on its grounds, the defendant did not commit any violent or destructive act, either to persons or property.  Nor did she encourage others to do so.  She concedes that it was she who encouraged her husband to join her in entering the Capitol, and at least in part Mr. Fassell's was prompted by a concern for the safety of his wife.  She takes full responsibility for her conduct, and feels ashamed that, for example, she smoked a cigarette while inside the building.

      7. The defendant has a  modest criminal record.  She has a 2006 arrest and conviction for DWI-Operating a Motor Vehicle in Pine City, Minnesota, the state in which she used to live, and a 2008 arrest for Drug Possession/Sale of marijuana in excess of 1.4 grams, a case that was dismissed about three weeks after her arrest. (PSI, pages 9-10, ¶¶37 and 40, respectively.)

      8.  With respect to the 2006 DWI offense, defendant received a sentence of probation, which was later revoked with the imposition of a sentence of sixty (60) days incarceration. (Id.) This occurred while defendant was abusing alcohol and marijuana. (PSI, page 12,  ¶56)  On her own, through sheer determination, the defendant ceased the use of either substance and has remained sober since 2012.  She attributes to several factors her success: her move from Minnesota to Florida; her regular attendance in AA/NA meetings; and to meeting her husband in church following her move to Florida..

---

[1] The PSI concludes that the defendant has the means with which to pay a fine. (PSI, page 13, ¶66)

9. Counsel has reviewed the Government's Sentencing Memorandum and provided a copy to his client. (Doc. 71) ("GSM").  The government spends considerable time reviewing other cases involving January 6 defendants. (GSM, Section E, "The Need to Avoid Unwarranted Sentencing Disparities," pp. 15-21)  It's unlikely that, when examined closely, any two defendants in these cases have engaged in identical while approaching or inside the Capitol. Yet the sense one gets in reading the examples cited is that the behavior of the other defendants and that of the defendant are more or less of a piece, yet the sentences imposed for the former are mostly for 30 days incarceration, in one case 45.  The defendant's spoken words might have been hortatory and reckless, and on those grounds inexcusable, but never did she cheer on rioters who were *actually* attacking police officers. (GSM, page 20, *United States v. Buhler*, 21-cr-00510 (CKK) ("(3) cheered as rioters physically crushed Capitol Police officers at the East Rotunda Doors…")  The defendant in that case received from this Court a sentence of thirty days incarceration.  Nor is there any inkling that the defendant hid evidence or obstructed justice, as this Court noted in the case of *United States v. Boyd Camper,* 21-cr-325 (CKK), in which the defendant chose not to provide to FBI investigators a memory card from a Go-Pro camera he used to video record inside the Capitol.[2]  The government requested a 60 day sentence in Mr. Camper's case, which this Court imposed, just as it has requested for the defendant.  In the circumstances, it seems that this *would* create an "unwarranted sentencing disparity."

10. Under 18 U.S.C. §3553(a) the following factors: (a) Factors To Be Considered in Imposing a Sentence. - The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in

---

[2] In that case, the FBI agents interviewed Mr. Camper twice and asked about the card's location, which Mr. Camper did not reveal. The FBI did not, however, either apply for a search warrant of Mr. Camper's home or property or demand production of the memory card.

determining the particular sentence to be imposed, shall consider - (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner….

      11.  The defendant stands before the Court with a scant criminal record.  The Court knows from the PSI that the defendant has been a hard-working, productive member of our society.  She obtained her certified nursing certificate forty-three years ago, in 1979. (PSI, page 12, ¶60.  She has had nursing assistant certification in the State of Florida and has worked as a caregiver and nursing assistant from the age of sixteen. This work has mostly been for the elderly. But even that does not tell the whole story.  The defendant's sole motivation from the time she was a little girl was to help others, and she has expressed to counsel that there's nothing else she'd rather or hope to do.  This has been her calling.  When counsel raised with her that the Court might impose a requirement of community service hours, her reaction was, "That's what I do now."

      12.  Like many others, the defendant let her strong feelings about the 2020 election and an ill-advised sense that 1st Amendment protections have no bounds take hold of her behavior that day.  It is regrettable that they did, because she is not a belligerent, much less violent, person. It would be apparent from her record if she were.

11. The defendant seeks a period of probation, in lieu of incarceration, which she submits would satisfy the "need for the sentence…to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense." She would remain subject to the jurisdiction of the Court, knowing that any infraction could lead to revocation of the probationary term, with incarceration to follow. Such a term would at the same time provide deterrence specific to the defendant, operating as a disincentive to further criminal behavior.

12. A term of probation would not disserve general deterrence. The public is aware, from the comprehensive coverage of the January 6 events and the arrests that followed, of the serious efforts the government has made to prosecute persons involved with the protests and, in many cases, the violence that was perpetrated.[3] These cases, from beginning to end, have been watched very closely by the press where defendants live, so the public will be aware of the defendant's responsibility for his conduct. That can serve to deter others in the future in similar situations.

10. The U.S. Probation Office recommends a fourteen-day sentence with no probation to follow; in contrast, the government recommends 60 days, with three years supervision. Defendant requests that if the Court decides incarceration is warranted, it be combined with a period of unsupervised probation. From what we know of the defendant's background, supervised probation does not appear necessary. She is 59 years of age, in a stable marriage, with a reliable work history and no evidence of substance abuse. The advantage of unsupervised probation is that the defendant would be answerable to this Court should she commit any new

---

[3] The physical assaults and destructive behavior by some has led many to vilify all those present –violent or not – during the January 6 riot. The defendant and her husband have been targets of death threats, sent to their home by U.S. Mail, while their cases were pending. Her reporting, through counsel, to the government of the threats led to the arrest of the sender, who when taken into custody confessed to his crimes.


offense during the probationary period but would not absorb resources of the Probation Office that she herself does not need.  The defendant is amenable to a requirement of community service and understands why it would be appropriate in the circumstances.  Last, in the event that this Court believes that incarceration, not probation, is appropriate, the defendant requests that the Court permit her to serve her time either in home confinement or, alternatively, during weekends in jail.

  For all the reasons noted above, the defendant respectfully requests a sentence of probation..

  This pleading is,

      Respectfully submitted,

        /s/

      NATHAN I. SILVER, II
      Unified Bar #944314
      6300 Orchid Drive
      Bethesda, MD 20817
      (301) 229-0189 (direct)
      (301) 229-3625 (fax)
      email: nisquire@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing pleading has been served via ECF on Jason M. Crawford, Esq. and Douglas Meisel, Esq., attorneys of record for the government, this 11th day of November, 2022.

        /s/
      _____
      *Nathan I. Silver, II*